# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUALLIANCE, et al., | 1:15-CV-754-LJO-BAM |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE POST-JUDGMENT VACATUR |
| v. | |
| U.S. BUREAU OF RECLAMATION, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs,[1] various water resource management and conservation organizations, challenged Defendants'[2] "10-year water transfer program to move water from sellers located upstream of the Sacramento/San Joaquin Delta ('Delta') to willing buyers south of the Delta" (the "Project"). ECF No. 16, First Amended Complaint ("FAC") at ¶ 2. Plaintiffs asserted Reclamation's and the Authority's

---

[1] Plaintiffs are AquAlliance, California Sportfishing Protection Alliance, South Delta Water Agency, Central Delta Water Agency, and Local Agencies of the North Delta.
[2] Defendants are U.S. Bureau of Reclamation ("Reclamation"), San Luis & Delta-Mendota Water Authority (the "Authority") U.S. Department of the Interior ("Interior"), Sally Jewell, in her official capacity as Secretary of the Interior, and U.S. Fish & Wildlife Service ("FWS"). The Court collectively refers to Defendants, excluding the Authority, as "Federal Defendants."

1

creation and approval of the Project's Final Long-Term Water Transfers Environmental Impact Statement/Environmental Impact Report[3] ("FEIS/R") violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the California Environmental Quality Act ("CEQA"), Cal. Pub. Res. Code §§ 21000 *et seq*. Plaintiffs also assert FWS's analysis of the Project's impacts to the giant garter snake ("GGS") and related approval of the Project's Final Biological Opinion ("BiOp") and Incidental Take Statement ("ITS") violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq*. FAC at ¶ 1.

The Parties filed cross-motions for summary judgment. ECF Nos. 45, 48, 49, 50. On February 15, 2018, the Court issued a 133-page Memorandum Decision and Order granting in part and denying in part the cross motions. ECF No. 70 ("MSJ Order"). In sum, the Court concluded "that both challenged documents (the FEIS/R and the BiOp[/ITS]) are at least in some part unlawful," and directed the Parties "to meet and confer before submitting a joint proposed form of judgment that identifies a schedule for remand and/or a joint proposed schedule for any anticipated further proceedings in this case." *Id*. at 133.

The Court emphasized that it "has provided ample and specific direction to give the parties and counsel what they need to make this happen without further involvement by this Court. The only matter beyond the control of the Court is a desire by both sides to accomplish this directive. The Court relies on the duty, competence, and professionalism of those involved to accomplish the mission." *Id*. Notwithstanding this plea, the Parties represent that they could not come to agreement on the matter of whether or not the Court should on remand vacate the agency decisions it found unlawful. Defendant argues for remand without vacatur. ECF No. 76. Plaintiff maintains vacatur is appropriate, if not required, under the circumstances. ECF No. 77. After considering the entire record, including two rounds of supplemental briefing, ECF Nos. 76-77 & 81-82, for the reasons set forth below, the Court has determined that vacatur is appropriate as to both the FEIS/R and the BiOp/ITS.

---

[3] Under NEPA, the Project's environmental report is referred to as an "Environmental Impact Statement," whereas it is referred to as an "Environmental Impact Report" under CEQA.

2

## II. STANDARD OF DECISION

Vacatur is the presumptive remedy when a court finds an agency's decision unlawful under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall hold unlawful <u>and set aside</u> agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]") (emphasis added); *Se. Alaska Conserv. Council v. U.S. Army Corps of Eng"rs*, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.") *rev'd on other grounds sub nom. Coeur Alaska v. Se. Alaska Conserv. Council*, 557 U.S. 261 (2009); *see also Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1241-43 (N.D. Cal. 2015).

However, vacatur is not required in every case. *See Cal. Communities Against Toxics v. U.S. Envtl. Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (*per curiam*) ("A flawed rule need not be vacated."). "When equity demands, [a flawed action] can be left in place while the agency follows the necessary procedures to correct its action." *Id*. (quoting *Idaho Farm*, 58 F.3d at 1405 (internal quotation marks omitted)). Nonetheless, courts in the Ninth Circuit decline to vacate unlawful agency action only in rare circumstances. *See Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n. 7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action.").

When determining whether to vacate an agency decision, courts in the Ninth Circuit look to the factors described in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). *See Cal Communities*, 688 F.3d at 993; *League of Wilderness Defs./Blue Mountains Biodiversity Project v. United States Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847, at *2 (D. Or. Dec. 10, 2012); *see also N. Coast Rivers All. v. United States Dep't of the Interior*, No. 1:16-CV-00307 LJO MJS, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016) (applying *Allied-Signal* factors in

context of voluntary remand). The *Allied-Signal* factors are: (1) the seriousness of an agency's errors and (2) the disruptive consequences that would result from vacatur. *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242 (*citing Cal. Communities Against Toxics*, 688 F.3d at 992 (internal quotation omitted)). "Put differently, 'courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error.'" *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242 (quoting *League of Wilderness Defs.*, 2012 WL 13042847, at *6). Courts have considered remand without vacatur to be appropriate where "serious irreparable environmental injury" would result from vacatur. *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010). In addition to environmental harm, it is appropriate to consider other practical concerns when weighing the consequences of vacatur. *Cal. Communities*, 688 F.3d at 993-94 (considering delay to "much needed power plant," possibly resulting in blackouts, to be a "severe" consequence of vacatur that may be considered in balance). In balancing these factors in relation to ESA claims, courts will "tip the scales in favor of the endangered species under the 'institutionalized caution' mandate." *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242 (internal citations and quotations omitted).

## III. ANALYSIS

### A. Disruptive Consequences

Under the second *Allied-Signal* factor, the Court may consider the disruptive consequences that would result from vacatur. *California Communities*, 688 F.3d at 992 (citing *Allied-Signal*, 988 F.2d at 150-51). Under a worst case scenario, the supplemental analyses and related procedures aimed at addressing the flaws the Court identified in the FIES/R and BiOp/ITS should be complete by early 2019. ECF No. 81 at 1-2. The Authority has determined that it will not participate in transfers from either crop fallowing or groundwater substitution this year. ECF No. 76 at 3. While Reclamation initially expected some "inter-basin" transfers from fallowed fields to the Tehama Colusa Canal Authority ("TCCA") this year, *id.* at 4, Reclamation later clarified that in light of more recent water supply information, TCCA will not be requesting inter-basin crop fallowing transfers this year. ECF No. 79 at ¶ 4. Therefore, there

4

will be no impact to water users as a result of being unable to transfer water under the Project this year, because no water users wish to transfer water under the Project.

The United States points to only one other potential "disruptive consequence" of vacatur in this case: if the BiOp/ITS is vacated (rather than remanded without vacatur to make corrections) Federal Defendants will be required to re-start the ESA consultation process and Reclamation will need to submit a new request for ESA consultation to FWS, which will require the preparation of a new biological assessment to include an updated description of the project, updated information about the status of the species, and updates regarding any additional science that published since the last consultation package was forwarded to FWS. *See* ECF No. 81 at 1-2. Federal Defendants anticipate that these additional procedures would add approximately two months to the schedule, meaning that any new BiOp would be completed by late February 2019. *Id*. at 2. Because Reclamation generally begins processing requests for transfers after February, any delays to the schedule could "greatly complicate" the transfer approval process. *Id*. Moreover, Federal Defendants point out that the closeness in time between the completion of the remand process and the transfer season would increase the likelihood that any future challenges would need to be brought by way of an emergency motion. *Id*.

All the above assertions are reasonable, but they do not justify remand without vacatur. Vacatur is the "normal remedy," *Se. Alaska*, 486 F.3d at 654, with remand without vacatur warranted by equity concerns in limited circumstances," namely serious irreparable environmental, *Ctr. for Food Safety*, 734 F. Supp. 2d at 951, or possibly other forms of significant harm to the public interest. *Cal. Communities*, 688 F.3d at 993. First, the facts and circumstances presented here suggest that there will be absolutely no consequences, environmental or otherwise, from vacatur of the FIES/R. Therefore the second *Allied-Signal* factor weighs in favor of vacatur of the FEIS/R. The Court finds it unnecessary to apply in detail the first *Allied-Signal* factor to the FEIS/R, as a court may only decline to vacate agency decisions "when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242. Even if, *arguendo*, the magnitude of the

5

agency's error is slight, the scale still cannot swing away from vacatur if there will be <u>no</u> irremediable harm whatsoever caused by vacating the FEIS/R.

As to the BiOp/ITS, the Court accepts Federal Defendants' assertions that vacatur may result in an additional delay, putting out completion of remand until late February 2019, increasing the likelihood of disrupting the transfer approval process in 2019 and increasing the likelihood of emergency motions practice in any future lawsuit. Yet, Federal Defendants fail to identify (and the Court cannot locate) any cases that even remotely suggest such <u>possible procedural difficulties</u> warrant departure from the default of vacatur. Federal Defendants' position, taken to its logical extreme, would turn the law on its head in the context of almost every complex environmental document. If a project is worth doing, someone, somewhere is waiting for it to happen. Delay (and/or related urgency) cannot on its own constitute the kind of disruptive consequence intended by *Allied-Signal*.

**B.      <u>Seriousness of the Agency's Errors</u>**

The first *Allied-Signal* factor–the seriousness of the agency's errors–does not swing in Federal Defendants' favor either. One way to measure the seriousness of an agency's errors is to attempt to evaluate the likelihood that the agency will be able to justify future decisions that would follow the status quo. *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048-49 (D.C. Cir. 2002) (cited with approval in *Klamath-Siskiyou*, 109 F. Supp. 3d at 1243, and *North Coast*, 2016 WL 8673038).

Defendants correctly summarize the three types of issues with the BiOp/ITS FWS must address on remand. First, the MSJ Order called for clarification as to whether water transfers from idled or fallowed fields would be permitted from certain areas indicated as having "known snake occurrences" on maps attached to the BiOp. ECF No. 70 at 126. In addition, the MSJ Order called for clarification of how certain "high priority areas" in which crop idling will not be permitted relate to "priority areas" in which idling may be permitted under certain circumstances. *Id*. at 127. Without this clarification, the bar against crop idling in high priority areas may be impossible to implement.

Second, the MSJ Order found that the BiOp/ITS failed to articulate why the conservation

measures identified therein avoid jeopardy in light of the absence of constraints on how close fallowed fields may be to one another and the number of consecutive years a field may lie fallow. *Id*. at 128. This needed to be addressed in light of the fact that the BiOp/ITS otherwise suggests that such constraints may be important to GGS. *Id*.

Finally, and relatedly, the MSJ Order found that the BiOp/ITS failed to justify its focus on maintaining water in canals and ditches, while failing to require maintenance of water in rice fields. *Id*. Again, this needs to be addressed in light of the fact that the BiOp/ITS suggests maintaining water in all of these environments, including rice fields, may be important to GGS. *Id*. at 128-29.

Defendants suggest that these issues can be addressed without much effort, promising the required "clarification" by the end of this calendar year if the BiOp/ITS is not vacated. ECF No. 76 at 4. Defendants present the Declaration of Jennifer Norris, Ph.D, the Field Supervisor of FWS's Sacramento Office. ECF No. 76-2. Dr. Norris explains that each year, FWS will review proposed water transfers and, if appropriate, will append an incidental take statement to the BiOp prior to any 2018 water transfers. "If FWS is not satisfied that the water transfers planned in any given year will not result in jeopardy to the GGS, it will not issue an incidental take statement. In issuing any ITS this year, FWS will take into account the issues identified by the Court with respect to the BiOp." *Id*. at ¶ 4. This assertion, while aiming in the right direction, is totally devoid of specifics. For example, will FWS impose constraints on how close fallowed fields may be to one another or whether a field fallowed in a previous year may be fallowed this year? Or, will FWS determine, as it did in the BiOp, that such constraints are not necessary? If the latter, how can that be explained and justified? Without such detail, the court simply cannot evaluate the likelihood that the agency will be able to justify future decisions that would follow the status quo, with the status quo being permitting transfers that rely on this legally inadequate BiOp.[4]

---

[4] As Defendants point out, ECF No. 76 at 4, the Court lacks jurisdiction to vacate Reclamation's actions on ESA grounds.

7

On balanced, in light of the fact that courts are generally inclined to "tip the scales in favor of the endangered species under the 'institutionalized caution' mandate," *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242 (internal citations and quotations omitted), the Court finds that vacatur of the BiOp/ITS is warranted. For the reasons previously stated, Federal Defendants have likewise failed to justify remand without vacatur of the FIES/R. Accordingly, vacatur of that document is ordered as well.

## IV. CONCLUSION AND ORDER

For the reasons set forth above and consistent with this Order and the Court's prior rulings, the parties are directed to submit a joint proposed form of judgment on or before June 29, 2018.

IT IS SO ORDERED.

Dated: **June 7, 2018**       **/s/ Lawrence J. O'Neill**
                                                     UNITED STATES CHIEF DISTRICT JUDGE